IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Kyetha SWEETING,<br><br>Plaintiff,<br><br>v.<br><br>Victor HILL, in his official capacity as the Sheriff of Clayton County, Georgia, and CLAYTON COUNTY, GEORGIA<br><br>Defendants. | **Civil Action No.** ____________________<br><br>**Jury Trial Demanded** |

**COMPLAINT**

COMES NOW, Kyetha Sweeting ("Ms. Sweeting" or "Plaintiff"), and brings this *Complaint* against the above-named Defendants as follows:

**Nature of the Action**

1.

This is an action for damages brought pursuant to Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq*. ("ADA") and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. ("FMLA").

**JURISDICTION AND VENUE**

2.

This Court has subject matter jurisdiction over this matter, which arises under federal law, pursuant to 28 U.S.C. § 1331.

3.

Venue is proper in this Court pursuant to 29 U.S.C. § 1391, because the violations of Plaintiff's rights alleged herein were committed in this division of this judicial district.

**PARTIES**

4.

Plaintiff Sweeting is a former employee of the Clayton County Sheriff's Office (CCSO). She is a citizen of Clayton County and the United States who submits herself to the jurisdiction of this Court.

5.

Defendant Hill is the elected Sheriff of Clayton County, Georgia, a constitutional office. He is sued in his official capacity as the alter-ego of CCSO. Hill may be served by personal service at his office, which is located at 9157 Tara Blvd, Jonesboro, Georgia 30236. This Court has personal jurisdiction over Hill.

6.

Defendant Clayton County, Georgia (the "County") is a political subdivision of the state of Georgia. CCSO has delegated significant authority to the County with respect to the employment relationship, including allowing the County jurisdiction over personnel appeals. The County is sued as a co-employer of CCSO. The County may be served be service upon the Chairman of its Board

of Commissioners, Jeffrey Turner, at his office, which is located at 112 Smith Street, Annex 1, Jonesboro, GA 30236. This Court has personal jurisdiction over the County.

7.

CCSO and the County are "employers" as defined by the ADA and FMLA.

**ADMINISTRATIVE PROCEDURES**

8.

Ms. Sweeting has exhausted her administrative remedies with respect to the claims asserted here.

9.

Ms. Sweeting timely filed charges of discrimination with the United States Equal Employment Opportunity Commission (EEOC) with respect to the claims asserted herein.

10.

The EEOC issued a "Notice of Right to Sue" on February 14, 2019, entitling an action to be commenced within 90 days of receipt of that notice.

11.

This action has been commenced within 90 days of Ms. Sweeting's receipt of the "Notice of Right to Sue."

## FACTUAL ALLEGATIONS

12.

Ms. Sweeting began her employment with CCSO on or about March 21, 2011.

13.

At the time of her termination, Ms. Sweeting was a Correctional Officer working primarily in the Clayton County jail.

14.

Ms. Sweeting has a neurological disorder that causes symptoms including severe, debilitating migraine headaches.

15.

Due to her medical condition, Ms. Sweeting at all times relevant to this complaint was assigned primarily to work in the infirmary, where she could work in low light conditions with limited inmate contact, in accordance with her physician's recommendation.

16.

In November of 2018, Ms. Sweeting reported to Sheriff Hill that one of her supervisors, Captain P. Barnes, had given her a performance evaluation that misstated her performance and falsely accused her of an incident of "no call no show," in order to deny her a merit raise.

17.

On November 13, 2018, Sheriff Hill instructed Major R. Lane to investigate the complaint.

18.

On November 14, 2018, Sheriff Hill instructed Major M. Felgenhauer to transfer Ms. Sweeting from her regular "day time" shift to the overnight or "morning watch" shift pending the investigation to avoid contact with Captain Barnes.

19.

Ms. Sweeting was not able to report to her first shift on "morning watch" due to a biopsy that had been scheduled months earlier on November 16, 2018. After the November 16, 2018, biopsy, Ms. Sweeting's physician recommended that she return to work the following day. Ms. Sweeting communicated this to her supervisor, who instructed her to come in just after midnight that same day, because that would technically be "the next day." This forced Ms. Sweeting to come into work bleeding and cramping.

20.

Ms. Sweeting began to experience medical difficulty as a result of her reassignment to the overnight shift. Her neurological condition required her to take medication that made her lethargic in the evening. Moreover, because she

was required to be awake all evening, she was unable to be awake and alert during the day to attend medical appointments.

21.

The significant change in her routine caused by the schedule change interfered with her medical treatment and caused symptoms including increased incidents of migraines, light-headedness, vertigo, and debilitating anxiety.

22.

On November 19, 2018, Major R. Lane issued his investigative findings, finding *inter alia* that Captain P. Barnes *had* provided inaccurate information regarding the alleged no call/no show incident.

23.

On numerous occasions, Ms. Sweeting requested accommodations from her supervisors, including medical leave to allow her to sleep and take her medications and permission to "swap shifts" with co-workers so that she would not have to work continuous overnight shifts. These requests were denied. She was not offered an explanation.

24.

Ms. Sweeting requested that she return to her regular shift since the investigation of Major Barnes was concluded, and it was the pendency of that

investigation that had ostensibly resulted in her being placed on overnight shift. However, her request was denied. She was not offered an explanation.

25.

On December 11, 2018, Ms. Sweeting presented her supervisors with a note from her physician, stating: "In addition to recommendations by neurology, please allow her to work a Monday-Friday schedule on her current shift to allow her to better manage her medications regime, and for the next three weeks, until her follow up with Neurology on 01/03, please limit any contact with inmates for her safety, as she is experiencing significant lightheadedness presumed related to her migraines."

26.

Lieutenant Paul informed Ms. Sweeting that the requested scheduling accommodation would not be honored. He did not give her an explanation.

27.

Captain Barnes came into the workplace numerous times during Ms. Sweeting's shift, thereby eliminating the original justification for moving Ms. Sweeting to overnight shift, i.e. to separate her from Captain Barnes.

28.

On or about December 21, 2019, Ms. Sweeting received from Pamela Ambles, a Clayton County human resources official, a "fitness for duty" form to

bring to her physician in order to provide the county with notice of her medical condition and any accommodations needed.

29.

Ms. Ambles told Ms. Sweeting that she was required to return the forms by January 3, 2019. Ms. Sweeting explained to Ms. Ambles that she did not have an appointment with her neurologist until January 3, 2019. Ms. Ambles told Ms. Sweeting that she should ask her primary care physician to complete it and then her neurologist could add information.

30.

Ms. Sweeting met with her primary care physician on or about December 24, 2018 for a consultation and to request that the physician complete the fitness for duty form.

31.

On January 3, 2019, Ms. Sweeting consulted with her neurologist.

32.

The neurologist suggested that Ms. Sweeting consider taking medical leave in order to stabilize her medication and recover.

33.

Ms. Sweeting contacting Clayton County Human Resources that day to inquire as to her eligibility for FMLA leave. A human resources official informed her that she would become eligible for FMLA on January 23, 2019.

34.

Ms. Sweeting also requested and obtained paperwork from human resources to apply for FMLA leave.

35.

That same day, she provided her supervisors with a letter from her neurologist requesting that she be returned to her original daytime shift in order to be able to take her medication regularly and to prevent the worsening of her migraine condition, in addition to her previously-requested accommodations.

36.

That same day, she provided her supervisors with a memorandum stating that she planned to go on FMLA leave beginning January 23, 2019 at the advice of her treating physicians.

37.

On Friday, January 4, 2019, Ms. Sweeting was contacted by Lt. Pauls and instructed not to come to work on her next shift, but to report on Monday, January 7, 2019 at 2:00 p.m. to meet with Assistant Chief Southerland.

38.

On January 7, 2019, Ms. Sweeting reported to the meeting with Assistant Chief Southerland and was immediately terminated.

39.

The stated reason for her termination, as reflected on her Separation Notice, was "inability to perform essential tasks and functions due to physical/medical limitation."

40.

Ms. Sweeting had requested numerous reasonable accommodations that would have allowed her to continue to perform the essential functions of her job—including a return to her original daytime shift, a regular Monday-Friday schedule, and reasonable medical leave—but each of these were denied to her without explanation.

41.

Ms. Sweeting later learned that Clayton County and CCSO had not even received the fitness for duty form completed by her physician at the time of her termination.

42.

Along with her separation notice, CCSO issued Ms. Sweeting a "criminal trespass warning," stating that she was prohibited from the premises of the

Clayton County Sheriff's Office and the Clayton County Courthouse. The warning stated that she was subject to arrest and/or prosecution if she violated the warning.

43.

The warning requires her to seek pre-approval from CCSO in order to come onto the properties from which she is prohibited.

44.

Ms. Sweeting desires to return to the property of the Clayton County Sheriff's Office and the Clayton County Courthouse as-needed to conduct the affairs of a citizen of Clayton County, but is deterred from doing so by the criminal trespass warning.

**SUBSTANTIVE CLAIMS**

**Count I: Americans with Disabilities Act**

45.

By this reference, Plaintiff incorporates her factual allegations as if fully set forth herein.

46.

Under the ADA, an employer must reasonably accommodate a qualified individual with a disability.

47.

Upon notice of a disabled employee's need for workplace accommodation, an employer is required to engage with the employee to determine whether an accommodation is reasonable.

48.

An employer is prohibited from discriminating against an employee due to said employee's physical or mental impairments.

49.

An employer is prohibited from retaliating against an employee for seeking reasonable accommodations.

50.

Ms. Sweeting was a "qualified individual with a disability" in that she was able to perform the essential functions of her job with reasonable accommodations.

51.

Defendant failed to engage with Ms. Sweeting regarding her request for a reasonable accommodation, as required by the ADA.

52.

Defendant failed to reasonably accommodate Ms. Sweeting's disability.

53.

Defendant terminated Ms. Sweeting due to physical impairments despite the fact that, with reasonable accommodations, she could have continued to perform the essential functions of her job.

54.

Defendant retaliated against Ms. Sweeting for seeking reasonable accommodations.

55.

Defendant's actions were willful, knowing, malicious, or carried out in reckless disregard for their lawfulness.

56.

Defendant is liable for all damages resulting from its violations of the ADA, including economic, compensatory, and punitive damages, plus attorneys' fees and costs.

**Count II: FMLA**

57.

By this reference, Ms. Sweeting incorporates her factual allegations as if fully set forth herein.

58.

The FMLA requires employers to provide eligible employees with twelve weeks of leave, on either a continuous or intermittent basis, during any twelve-month period due to the employee's serious health condition.

59.

The FMLA forbids an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right to protected leave.

60.

Ms. Sweeting would have been eligible for FMLA leave, on either a continuous or intermittent basis, beginning on January 23, 2019. She had notified her employer of her intent to invoke same.

61.

Defendant interfered with Ms. Sweeting's right to take leave protected by the FMLA by terminating her prior to her becoming eligible to take same.

62.

Defendant retaliated against Ms. Sweeting for notifying Defendant of her intent to invoke FMLA leave by terminating her.

63.

Upon information and belief, Defendant's violation of Ms. Sweeting's FMLA rights was willful or, in the alternative, carried out with deliberate indifference to her rights.

64.

Ms. Sweeting is entitled to recover all economic losses caused by Defendant's interference with her FMLA rights, in addition to liquidated damages, interest, and reasonable attorneys' fees and costs.

**Count III – Violation of U.S. Constitution**

65.

By this reference, Ms. Sweeting incorporates her factual allegations as if fully set forth herein.

66.

By prohibiting her from coming onto the premises of the Clayton County Sheriff's Office or the Clayton County Courthouse, under penalty of criminal sanction, CCSO has prevented Ms. Sweeting from coming onto public property for legitimate purposes for which all citizens are entitled to enter said property, including the reporting of crimes, participation in legal proceedings, and observance of legal proceedings.

67.

These prohibitions violate Ms. Sweeting's rights under the U.S. Constitution, including her rights under the First and Fourteenth Amendments.

68.

Ms. Sweeting is entitled to injunctive and equitable relief requiring CCSO to lift its prohibition upon her entering the property of the Sheriff's Office or the Courthouse.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a) That a trial by jury be had on all issues for which a jury trial is permitted under law;

b) That damages be awarded against Defendant to compensate the Plaintiffs for the injuries suffered as a consequence of Defendant's actions in an amount to be determined by the enlightened conscious of the jury;

c) That punitive and liquidated damages be awarded against Defendant;

d) That attorney's fees and expenses of litigation be awarded to Plaintiffs;

e) That equitable relief, including lifting of her prohibition from county property, reinstatement or front pay in lieu thereof, be awarded to Plaintiff;

f) That pre-judgment and post-judgment interest be awarded; and

g) That the Court award such other equitable or monetary relief as the Court deems just and proper.

Respectfully submitted, this May 15, 2019.

*/s/ James Radford*
James Radford
Georgia Bar No. 108007

Radford & Keebaugh, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0302
james@decaturlegal.com

*Attorneys for Plaintiff*