UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KYETHA SWEETING,

    Plaintiff,

v.

VICTOR HILL, in his official capacity as the Sheriff of Clayton County,

    Defendant.

CIVIL ACTION NO.
1:19-CV-02200-JPB

## ORDER

This matter is before the Court on the Magistrate Judge's Final Report and Recommendation [Doc. 53]. This Court finds as follows:

### BACKGROUND

On March 21, 2011, Kyetha Sweeting ("Plaintiff"), who suffers from migraine headaches, began working for Victor Hill ("Defendant")[1] as a Sheriff Correctional Officer ("SCO") at the Clayton County Jail. [Doc. 52-1, p. 1]. The Clayton County Jail can house up to 2,000 inmates, and SCOs provide security and supervision for inmates at the jail. [Doc. 49, pp. 1-2].

---

[1] Defendant is sued in his official capacity as the Sheriff of Clayton County, and therefore this Court uses the personal pronoun "it" when referring to Defendant because "the real party in interest . . . is the governmental entity and not the named official." Hafer v. Melo, 502 U.S. 21, 25 (1991).

During her employment, Plaintiff took intermittent leave under the Family Medical Leave Act ("FMLA") and asked for several accommodations related to her migraines.  Specifically, after Plaintiff was injured in a fight with an inmate, she worked in a light duty assignment at a security checkpoint from August 2017 to January 2018.  Id. at 13.  Thereafter, Plaintiff took intermittent leave under the FMLA from January 23, 2018, through April 17, 2018.  Id. at 14-15.  During the time she was on intermittent leave, on March 27, 2018, Plaintiff asked for, and received, two days off per week due to the chronic nature of her migraines.  Id. at 19.  In April 2018, Plaintiff asked to work in a "low-lit, low-noise area" for two weeks.  Id. at 20.  This request was granted, and as a result, Defendant assigned Plaintiff to the medical unit control tower.  Id.  On October 24, 2018, Plaintiff requested another accommodation.  In that request, Plaintiff asked to continue working in a "low-light, low-noise environment" and asked for no overtime due to her health condition.  Id. at 20-21.  Defendant granted the request, and Plaintiff continued to work in the medical unit control tower.  Id. at 21.

Not long thereafter, on December 11, 2018, Plaintiff asked to work a Monday through Friday schedule to allow her to better manage her medications regime and asked, for safety reasons, to "limit any contact with inmates" because she was experiencing significant lightheadedness presumably related to migraines.

Id. Unlike Plaintiff's other requests, this request was not immediately granted. After reviewing the request, Assistant Chief Southerland determined that Plaintiff's most recent request was not in line with Plaintiff's job duties and sought a fitness for duty certification from Plaintiff's medical providers. Id. at 22.

In response, Plaintiff's neurologist provided Defendant with the following:

> Plaintiff was seen in our office on 1/3/19. Please allow her to work a daytime schedule, as working night shift can be detrimental to her migraine condition and working daytime will allow her to take her medication more regularly. Please limit her contact to inmates, as she is experiencing lightheadedness[,] and this may be detrimental to her safety. Please allow her [to work] in [a] low-light, low noise environment with no overtime due to symptoms of her migraine. Her next appointment in Neurology [is] on 3/12/19.

Id. at 23-24. Plaintiff's primary care physician also supplied Defendant with information. The primary care physician reported that Plaintiff's condition would not pose "a direct threat to the health and safety of [herself] or others in the workplace." [Doc. 48-3, p. 2]. The physician also indicated that within one month, he expected a fundamental or marked change in Plaintiff's condition and that Plaintiff would recover sufficiently to perform the essential and additional functions of her job. Id. at 4.

On January 3, 2019, Plaintiff notified the human resources department that she intended to take FMLA leave when she became eligible. [Doc. 52-1, p. 13].

3

Just four days later, Assistant Chief Southerland was scheduled to meet with Plaintiff to discuss her work restrictions and request for accommodation. [Doc. 49, p. 25]. At the meeting, instead of discussing the restrictions, Chief Southerland fired Plaintiff after determining that she could not perform the essential functions of her job. Id. at 28.

On the same day that Defendant fired Plaintiff, Plaintiff was served with a "Criminal Trespass Warning" which stated that Plaintiff was "forbidden from the premises of the Clayton County Sheriff's Office and the Clayton County Courthouse." [Doc. 52-1, p. 24]. The Criminal Trespass Warning contained a statement that violations could result in arrest and prosecution. Id. at 25.

Based on the above facts, Plaintiff sued Defendant and Clayton County[2] alleging the following causes of action: (1) failure to accommodate and retaliation in violation of the Americans with Disabilities Act ("ADA"); (2) failure to accommodate and retaliation in violation of the Rehabilitation Act; (3) interference with FMLA leave and retaliation; and (4) violation of the United States Constitution. [Doc. 8]. On January 29, 2021, Defendant moved for summary judgment. [Doc. 44]. The Magistrate Judge issued her Final Report and

---

[2] Earlier in the litigation, Plaintiff conceded that Clayton County should be dismissed. [Doc. 48, pp. 4-5].

Recommendation on May 20, 2021, wherein she recommended granting in part, and denying in part, Defendant's motion. [Doc. 53]. Specifically, the Magistrate Judge recommended granting summary judgment as to the claims against Clayton County and denying the remainder of the motion. Id. On June 14, 2021, Defendant filed its objections to the Magistrate Judge's Report and Recommendation. [Doc. 57].

## LEGAL STANDARD

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the Report and Recommendation that is the subject of a proper objection on a *de novo* basis and any non-objected-to portion under a "clearly erroneous" standard. Notably, a party objecting to a recommendation "must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988). It is reasonable to place this burden on the objecting party because "[t]his rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the

purposes of the Magistrates Act." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009).

## ANALYSIS

Neither party objected to the Magistrate Judge's recommendation to dismiss the claims against Clayton County.  Likewise, no objections were filed pertaining to the Magistrate Judge's recommendation to deny Defendant's Motion for Summary Judgment as to Plaintiff's constitutional claim, which is related to Plaintiff's exclusion from the Clayton County Sheriff's Office and Clayton County Courthouse.  Because no objections were filed, and in accordance with 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court has reviewed those portions of the Final Report and Recommendation for clear error and finds none.  As to those sections, the Court **APPROVES AND ADOPTS** the Final Report and Recommendation [Doc. 53] as the judgment of the Court.

Defendant timely filed objections to the remainder of the Report and Recommendation.  [Doc. 57].  Each objection is discussed below.

1. **Essential Functions of the SCO Position**

Both the ADA and the Rehabilitation Act protect individuals with disabilities.  More specifically, the ADA prohibits discrimination against a disabled person by reason of the person's disability.  42 U.S.C. § 12132.

6

Similarly, the Rehabilitation Act states that no disabled person shall "by reason of [her] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.  Under both acts, the failure to provide a reasonable accommodation to an individual with a disability can constitute discrimination.  Importantly, claims under either act are governed by the same standard, and courts "rely on cases construing [the ADA and the Rehabilitation Act] interchangeably."  Silberman v. Miami Dade Transit, 927 F.3d 1123, 1133 (11th Cir. 2019) (citation and quotation omitted).

To establish a prima facie claim for failure to accommodate under the ADA or Rehabilitation Act, the plaintiff must show that:  (1) she was disabled; (2) she was a qualified individual in that she could perform the essential functions of the job with or without reasonable accommodations; and (3) she was discriminated against by way of the defendant's failure to provide a reasonable accommodation.  Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001).

Regarding the second element, a "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  Generally speaking, a plaintiff "must

7

show either that [she] can perform the essential functions of [her] job without accommodation, or, failing that, show that [she] can perform the essential functions of [her] job with a reasonable accommodation." <u>Davis v. Fla. Power & Light Co.</u>, 205 F.3d 1301, 1305 (11th Cir. 2000). Thus, if a plaintiff cannot perform an essential function of her job even with an accommodation, she is, by definition, not a "qualified individual" and, therefore, not covered under the ADA. <u>Id.</u>

In the Report and Recommendation, the Magistrate Judge determined that a genuine issue of material fact existed as to whether Plaintiff was a qualified individual who could perform the essential functions of her job. In making this determination, the Magistrate Judge cited to the form completed by Plaintiff's primary care physician where the physician stated in plain terms that Plaintiff "would be able to perform all the essential functions [of her job] in a period of one month." [Doc. 48, p. 13]. The Magistrate Judge determined that "[a] reasonable jury could find, based on the fitness-for-duty form, that Plaintiff would have 'recover[ed] sufficiently to perform [the] essential and additional functions of [her] job' with one month of leave." [Doc. 53, p. 16].

In Defendant's first objection, Defendant argues that the Magistrate Judge erred by failing to make any findings on the essential functions of the SCO

position. [Doc. 57, p. 14]. Essentially, Defendant asserts that Plaintiff was required to work mandatory overtime and perform many physical and mental tasks, and the Magistrate Judge made "no effort to rebut such a conclusion." Id. at 15-16.

This Court assumes that mandatory overtime and certain physical and mental tasks are essential functions of Plaintiff's job. Defendant, however, fails to rebut Plaintiff's evidence (or specifically address the Magistrate Judge's recommendation) that Plaintiff will be able to perform these essential functions after a one-month period of leave. Certainly, neither party presented any undisputed evidence that after one month, Plaintiff would not be able to work overtime or engage in physical and mental tasks. Here, Defendant simply assumed that Plaintiff would not be able to work even after a one-month period of leave and despite her physician's report. This type of speculation is not enough to defeat summary judgment. As such, Defendant's first objection is **OVERRULED**.

2. **Reasonable Accommodation**

Under the ADA and the Rehabilitation Act, Plaintiff must offer Defendant a suggestion of a reasonable accommodation which would allow her to perform the essential functions of her job. Lewis v. Zilog, Inc., 908 F. Supp. 931, 946 (N.D. Ga. 1995). In Defendant's second objection, Defendant contends that the Magistrate Judge incorrectly concluded that Plaintiff identified a reasonable

accommodation. [Doc. 57, p. 16]. Specifically, Defendant argues that the Magistrate Judge erred in determining that Plaintiff's request for a leave of absence was limited in duration, especially after considering Plaintiff's previous history. Defendant asserts that "nothing under the ADA or [Rehabilitation Act] requires this Court to conclude that Plaintiff's previous use of leave should be forgotten in its analysis." Id. at 19.

     As an initial matter, it is important to note that Defendant does not meaningfully address whether Plaintiff could have been accommodated simply by allowing her to continue working in the medical unit control tower. Defendant had already determined that this assignment was a reasonable accommodation for the limitations Plaintiff had as of October 24, 2018. The restriction that caused Defendant concern was the limitation on Plaintiff having contact with inmates, which Defendant automatically construed as meaning that Plaintiff could have no contact with inmates. However, the phrase could simply mean reduce inmate contact, and as Defendant's witness admitted, the infirmary has a lot less inmates. Defendant never disputes the Magistrate Judge's finding that a reasonable jury could find that being assigned to the medical unit, especially the control tower, would have allowed Plaintiff to limit her contact with inmates as directed by Plaintiff's physician.

Instead of addressing whether the control tower position could be a reasonable accommodation, Defendant argues that Plaintiff requested perpetual light duty and an indefinite period of leave. This Court acknowledges that a reasonable accommodation does not require Defendant to wait indefinitely for Plaintiff's medical condition to improve. See Wood v. Green, 323 F.3d 1309, 1314 (11th Cir. 2003). In other words, an accommodation is unreasonable if it does not allow someone to perform her job duties in the present or in the immediate future. Id. This Court, however, agrees with the Magistrate Judge that a genuine issue of material fact exists as to whether Plaintiff's request for an accommodation was "indefinite" in nature. This Court cannot ignore that Plaintiff's physician provided a report that stated in one month, Plaintiff's condition would markedly improve, and she would be able to perform the essential functions of her job without an accommodation. Cf. Billups v. Emerald Coast Utils. Auth., 714 F. App'x 929, 935 (11th Cir. 2017) (holding that the plaintiff's request for accommodation was not reasonable because the plaintiff did not articulate a specific time in which he would recover). Under these facts, summary judgment is improper, and Defendant's second objection is **OVERRULED**.

### 3. **Regarded as Disabled**

Disability is defined as follows: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). In this case, the Magistrate Judge determined that Plaintiff created a triable issue of fact as to whether she was "disabled" within the meaning of the ADA and Rehabilitation Act because Plaintiff presented evidence that she was substantially limited in the work she could do. Specifically, Plaintiff presented evidence that because of her migraines, she could not perform any work involving bright lights and sounds and was also limited to no more than twenty minutes of standing or walking.

In the alternative, the Magistrate Judge pointed out that Defendant explicitly decided to terminate Plaintiff's employment because it concluded she was unable "to perform the essential tasks and functions due to physical/mental limitations." [Doc. 53, p. 11]. Thus, the Magistrate Judge reasoned that even if Plaintiff's impairment did not limit her in a major life activity, "there is a genuine issue of material fact as to whether she was 'regarded as' disabled by Defendant." Id.

Defendant, in its third objection, argues that the Magistrate Judge erred in concluding that a genuine issue of material fact exists as to whether Plaintiff was

"regarded as" disabled, and therefore argues that summary judgment is appropriate. [Doc. 57, p. 20]. Defendant contends that Plaintiff only argued in conclusory terms that Defendant regarded her as a person with a disability.

An individual is regarded as disabled if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities. D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1228 (11th Cir. 2005). This Court agrees with Defendant that Plaintiff's argument was conclusory.[3] Moreover, even though Defendant terminated Plaintiff because Defendant believed she was unable to perform the essential functions of the SCO, there is no evidence that Defendant believed that Plaintiff was unable to work in a broad class of jobs. Id. at 1227 (stating that when the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that a plaintiff allege that she is unable to work in a broad class of jobs). Because it is not apparent that Defendant believed that Plaintiff was unable to work in a broad class of jobs, Defendant's objection is **SUSTAINED**.

Even though the objection is sustained, Defendant never objected to the Magistrate Judge's finding that a genuine issue exists as to whether Plaintiff is

---

[3] Plaintiff merely argued that Defendant "plainly had a record of [Plaintiff] having a disability, and regarded her as a person with a disability." [Doc. 48, p. 4].

13

actually disabled in that a physical or mental impairment substantially limits one or more of Plaintiff's major life activities. Because Plaintiff presented evidence that she cannot work in a broad class of jobs [Doc. 48-3, p. 3], Defendant is not entitled to summary judgment as to this ground.

4. **Direct Threat**

In Defendant's fourth objection, Defendant argues that the Magistrate Judge erred in rejecting its direct threat defense. The direct threat defense allows an employer to fire a disabled employee if the disability "renders the employee a 'direct threat.'" Todd v. Fayette Cnty. Sch. Dist., 998 F.3d 1203, 1217 n.9 (11th Cir. 2021). A direct threat is one that creates "a significant risk of substantial harm to the health or safety of the individual or others" that cannot be eliminated or reduced by reasonable accommodation. Id. Ordinarily, "[t]he definition of the direct threat defense requires an analysis of the individual's ability to perform safely the 'essential functions of the job.'" Lewis v. City of Union, 934 F.3d 1169, 1184-85 (11th Cir. 2019).

Defendant argues that because Plaintiff could not have contact with inmates, she posed a direct threat to the safety of herself and others. Defendant's objection is flawed for several reasons. First, Defendant's argument assumes that Plaintiff could not have contact with inmates. As already explained, a genuine issue of

14

material fact exists as to whether Plaintiff could have inmate contact.  Second, Defendant never addresses the evidence that Plaintiff could perform all essential functions of her job within one month after she takes a leave of absence.  Certainly, during the leave of absence, the direct threat defense would not be applicable.  Because this Court must construe all evidence most favorably to Plaintiff, Defendant's objection is **OVERRULED**.

   5. **Retaliation Claim**

"The ADA prohibits retaliation against an individual for opposing an unlawful practice or making a charge under the ADA."  Frazier-White v. Gee, 818 F.3d 1249, 1258 (11th Cir. 2016).  A plaintiff must show the following to establish a prima facie case of retaliation:  (1) that she engaged in a statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there was a causal link between the two.  Id.  If a plaintiff shows a prima facie case, "the burden then shifts to the defendant employer to come forward with legitimate non-discriminatory reasons for its actions that negate the inference of retaliation." Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997).  If the defendant provides such a reason, the burden returns to the plaintiff to show that the defendant's proffered reason for the adverse action is pretextual.  Gilliard v. Ga. Dep't of Corr., 500 F. App'x 860, 864 (11th Cir. 2012).

Defendant, in its fifth objection, argues that Plaintiff did not engage in protected activity under the ADA or the Rehabilitation Act. [Doc. 57, p. 22]. More particularly, Defendant argues that because Plaintiff requested an unreasonable accommodation (in Defendant's opinion, indefinite leave or perpetual light duty), then the activity was not protected. Id. In Defendant's sixth objection, it argues that the causation element is lacking because "the undisputed record shows [that] Plaintiff did not seek a reasonable accommodation." Id. at 23. As explained in this Court's previous analysis, it is not undisputed that Plaintiff's request for an accommodation was unreasonable. Thus, Defendant's objection is **OVERRULED**.

6. **FMLA Claim**

Plaintiff brings two different claims under the FMLA: an interference claim and a retaliation claim. The Magistrate Judge determined that both claims could proceed. As to the interference claim, the Magistrate Judge reasoned that a reasonable jury could conclude that Plaintiff was able to perform the essential functions of her position with a reasonable accommodation—either remaining in the medical unit control tower or taking one month of leave. [Doc. 53, p. 33]. The Magistrate Judge further reasoned that a reasonable jury could disbelieve Defendant's explanation for Plaintiff's termination and decide that Defendant's

decision to terminate Plaintiff was motivated by a desire to avoid having to accommodate her disability.  Id. at 33-34.  In short, the evidence showed that Defendant knew that Plaintiff would be eligible to take FMLA leave starting on January 23, 2019, and knew that Plaintiff planned to take such leave.  Defendant, however, terminated Plaintiff only three days after she requested the leave.

As to the retaliation claim, the Magistrate Judge could not ignore the close temporal proximity of Plaintiff's request for leave and her termination.  Id. at 36.  While the Magistrate Judge acknowledged that Defendant offered a legitimate, non-discriminatory reason for Plaintiff's termination, the Magistrate Judge determined that a reasonable jury could conclude that Defendant's purported reason was pretext, especially since one of Defendant's witnesses admitted that Plaintiff's decision to take leave was a contributing factor to her termination.  Id. at 37-38.

In Defendant's final two objections, Defendant does not specifically address the Magistrate Judge's reasoning or her findings.  For instance, Defendant does not address the close temporal proximity of Plaintiff's request for leave and her termination.  Defendant also does not address the admission that Plaintiff was fired, in part, for taking leave.  Instead, Defendant merely restates the arguments

made in the initial summary judgment briefing. Because Defendant's objections are non-specific general objections, the objections are **OVERRULED**.

## CONCLUSION

After reviewing the entirety of the Final Report and Recommendation and considering Defendant's objections, the Final Report and Recommendation is **ADOPTED** as the order of this Court. For the reasons stated by the Magistrate Judge and for the reasons stated herein, Defendant's Motion for Summary Judgment [Doc. 44] is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Clayton County and **DENIED** in all other respects.

The parties are **HEREBY ORDERED to** file the Consolidated Pretrial Order required by Local Rule 16.4 within twenty-one days of entry of this Order. The parties are notified that a failure to comply with this Order may result in sanctions, including dismissal of the case or entry of default judgment. In the event a Consolidated Pretrial Order is not filed, the Clerk is **DIRECTED** to submit the case at the expiration of the twenty-one-day period.

**SO ORDERED** this 6th day of August, 2021.

J. P. BOULEE
United States District Judge